KAREN G. JOHNSON-MCKEWAN, State Bar No. 121570
Email: kjohnson-mckewan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Telephone:    1-415-773-5700
Facsimile:    1-415-773-5759

ROBERT L. SILLS (*pro hac vice*)
Email: rsills@orrick.com
OLGA SIRODOEVA (*pro hac vice*)
Email: osirodoeva@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, New York  10019-6142
Telephone:    1-212-506-5000
Facsimile:    1-212-506-5151

Attorneys for DEFENDANTS OJSC RUSNANO; RUSNANO MANAGEMENT
COMPANY, LLC; RUSNANO CAPITAL, A.G.; RUSNANO CAPITAL, LLC; FONDS
RUSNANO CAPITAL, S.A.; ANATOLY CHUBAIS; OLEG KISELEV; IRINA
RAPOPORT; SERGEY POLIKARPOV; and VALERY ROSTOKIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEAS LIMITED, individually in its own right and derivatively on behalf of NITOL SOLAR LIMITED; and ANDREY TRETYAKOV,<br><br>Plaintiffs,<br><br>v.<br><br>OJSC RUSNANO; RUSNANO MANAGEMENT COMPANY, LLC; RUSNANO CAPITAL, A.G.; RUSNANO CAPITAL, LLC; RUSNANO USA, INC.; FONDS RUSNANO CAPITAL, A.G.; ANATOLY CHUBAIS; OLEG KISELEV; IRINA RAPPAPORT; SERGEY POLIKARPOV; VALERY ROSTOKIN; SHERIGO RESOURCES LIMITED; and JOHN DOES 1 THROUGH 10,<br><br>Defendants,<br><br>and<br><br>NITOL SOLAR LIMITED,<br><br>Nominal Defendant. | Case No. 5:15-cv-01612-RMW<br><br>**FOREIGN DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS, FED. R. CIV. P. 8, 9(b), 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>DATE:          January 22, 2016<br>TIME:          9:00 am<br>COURTROOM: 6<br>JUDGE:        Hon. Ronald M. Whyte |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 2

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 4

III.  STATEMENT OF FACTS ..................................................................................... 5

    A.   The Parties ...................................................................................................... 5

    B.   The Nitol Plant In The Russian Region Of Irkutsk, Siberia ......................... 6

    C.   The RUSNANO Investment ........................................................................... 7

    D.   Pledge Enforcement By RUSNANO .............................................................. 7

IV.   ARGUMENT ........................................................................................................ 8

    A.   The Court Should Dismiss This Action On Grounds Of *Forum Non Conveniens* ..................................................................................................... 8

        1.    Russia Is An Adequate Alternative Forum For Plaintiffs' Claims ............ 9

        2.    The Balance Of Private And Public Interest Factors Favors Dismissal ................................................................................................. 10

            a.    The Private Interest Factors Favor Dismissal ............................... 10

            b.    The Public Interest Factors Favor Dismissal ................................ 14

    B.   The Court Should Dismiss The Amended Complaint As To All Of The Foreign Defendants For Lack Of Personal Jurisdiction ................................ 16

        1.    Plaintiffs Do Not Allege And Cannot Establish General Jurisdiction Over Any Of The Foreign Defendants ...................................... 16

        2.    Plaintiffs' Attempt To Avoid Dismissal By Imputing Rusnano USA's Contact With California To Other Corporate Defendants Fails ......................................................................................................... 17

        3.    Plaintiffs Cannot Establish Specific Jurisdiction Over Any Of The Foreign Defendants .............................................................................. 21

    C.   This Court Lacks Subject Matter Jurisdiction Over The Claims Against RUSNANO (Or Any Corporate Defendants) Because Each Of Them Enjoys Sovereign Immunity On Plaintiffs' Theory Of The Case ....................... 23

V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ........................................................................................................ 24

VI.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.R. Intern. Sys., Inc. v. Pretoria Nat. Cent. Bureau of Interpol,*
　　634 F. Supp. 2d 1108 (E.D. Cal. 2009)......................................................................25

*Agardi v. Hyatt Hotels Corp.,*
　　2014 WL 2860658 (N.D. Cal. Jun. 23, 2014).............................................................25

*Allegro Consultants, Inc. v. Wellington Tech., Inc.,*
　　2014 WL 4352344 (N.D. Cal. Sept. 2, 2014) .............................................16, 17, 21

*Ambriz Trading Corp. v. Uralsib Fin. Corp.,*
　　2011 U.S. Dist. LEXIS133928 (S.D.N.Y. Nov. 21, 2011) .........................................9

*AT&T v. Compagnie Bruxelles Lambert,*
　　94 F.3d 586 (9th Cir. 1996)..................................................................................18, 20

*Barantsevich v. VTB Bank, et al.,*
　　954 F. Supp. 2d 972, 986 (C.D. Cal. 2013)...............................................................21

*Base Metal Trading Ltd. v. Russian Aluminum,*
　　2004 U.S. App. LEXIS 8547 (2d Cir. April 30, 2004) ...............................................9

*Bui v. Golden Biotech. Corp.,*
　　2014 WL 4072112 (N.D. Cal. Aug. 14, 2014)....................................16, 18, 19, 20

*ChemRisk LLC v. Chappel,*
　　 2011 WL 1807436, (N.D. Cal. May 12, 2011) .........................................................23

*Conn v. ZaKharov,*
　　667 F.3d 705 (6h Cir. 2012).........................................................................................9

*Contract Lumber Co. v. P.T. Moges Shipping Co. Ltd.,*
　　918 F.2d 1446 (9th Cir. 1990)....................................................................................12

*Core-Vent Corp. v. Nobel Indus. AB,*
　　11 F.3d 1482 (9th Cir. 1993).......................................................................................22

*Daimler AG v. Bauman,*
　　134 S.Ct. 746 (2014) .......................................................................16, 17, 18

*Dibdin v. South Tynside NHS Healthcare Trust,*
　　2013 WL 327324 (C.D. Cal. Jan. 29, 2013) ........................................................ *passim*

*Doe v. Unocal Corp.,*
　　248 F.3d 915 (9th Cir. 2001)................................................................................20, 21

*E.g., Hillsborough Holdings Corp.,* 166 B.R. 461 (Banker M.D. Fla. 1994), aff'd
    176 B.R. 223 (M.D. Fla. 1994) ........................................................................................19

*Freidzon v. Lukoil et al.,*
    2015 U.S. Dist. LEXIS 32040 (S.D.N.Y. Mar. 12, 2015) ............................................9

*Gemini Capital Group, Inc. v. Yap Fishing Corp.,*
    150 F.3d 1088 (9th Cir. 1998)........................................................................................10

*King v. Meek,*
    2015 WL 3660199 (E.D. Cal. Jun. 11, 2015) ................................................................17

*Kramer v. British Leyland, Ltd.,*
    628 F.2d 1175 (9th Cir. 1980)........................................................................................20

*Leetsch v. Freedman,*
    260 F.3d 1100 (9th Cir. 2001)........................................................................................12

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001)................................................................................*passim*

*Mainstream Media, EC v. Riven,*
    2009 WL 2157641 (N.D. Cal. Jul. 17, 2009)................................................................23

*Marshall v. Monster Bev. Corp.,*
    2014 WL 3870290 (N.D. Cal. Aug. 6, 2014)................................................................10

*Martinez v. White,*
    492 F. Supp. 2d 1186, 1192 (N.D. Cal. 2007) ..............................................................14

*Nimbus Data Sys., Inc. v. Modus LLC,*
    2014 WL 7387200 (N.D. Cal. Dec. 29, 2014) ..............................................................23

*Pavlov v. The Bank of New York Co.,*
    135 F. Supp. 2d 426 (S.D.N.Y., 2001) ............................................................................9

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)...................................................................................................9, 15

*Ranza v. Nike, Inc.,*
    793 F.3d 1059, 1077 (9th Cir. Jul. 18, 2015)..........................................................*passim*

*Reimer v. Corp. de Viajes Mundiales S.A.,*
    2014 WL 5492774, (N.D. Cal. 2014)............................................................................13

*Ruelas Aldaba v. Michelin North Am., Inc.,*
    2005 WL 3560587 (N.D. Cal. Dec. 29, 2005) ................................................................9

*Sarandi v. Breu,*
    2009 WL 2871049, (N.D. Cal. Sept. 2, 2009) ..............................................11, 12, 14

FOREIGN DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:15-CV-01612-RMW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)...........................................................................................22

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
    549 U.S. 422 (2007).........................................................................................................8

*Sterwart v. Screen Gems-EMI Music, Inc.*,
    2015 WL 890994 (N.D. Cal. Mar. 2, 2015).....................................................................16

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012)....................................................................................23, 24

*Walden v. Fiore*,
    134 S.Ct. 1115 (2014).....................................................................................................21

**Federal Statutes**

28 U.S.C. § 1603................................................................................................................23

28 U.S.C. § 1604................................................................................................................23

28 USC § 1605(a)(2)..........................................................................................................24

Foreign Sovereign Immunities Act (FSIA).............................................................4, 23, 24

Rackateer Influenced and Corrupt Organizations (RICO) Act ...............................4, 9, 15

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ..........................................................................................4

**Rules**

Fed. R. Civ. P. 8, 9(b) ..........................................................................................................1

Fed. R. Civ. P. 12(b)(1).........................................................................................................1

Fed. R. Civ. P. 12(b)(2).........................................................................................................1

Fed R. Civ. P. 12(b)(6)..........................................................................................................1

**Other Authorities**

http://alfabank.com/russia/...................................................................................................7

http://www.ustraveldocs.com/ru/ru-niv-visaapply.asp ......................................................13

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2          NOTICE IS HEREBY GIVEN that, on January 22, 2016, at 9:00 a.m., or as soon

3    thereafter as counsel may be heard, before the Honorable Ronald M. Whyte, United States

4    District Judge for the Northern District of California, in Courtroom 6 of the Robert F. Peckham

5    Federal Building, 280 South 1st Street, San Jose, California 95113, Defendants OJSC RUSNANO

6    ("RUSNANO"); Rusnano Management Company, LLC ("RMC"); Rusnano Capital, A.G.

7    ("RCA"); Rusnano Capital, LLC ("RCL"); Fonds Rusnano Capital, S.A. ("Fonds," and together

8    with RUSNANO, RMC, RCA, and RCL, the "Corporate Defendants"); Anatoly Chubais; Oleg

9    Kiselev; Irina Rapoport; Sergey Polikarpov; and Valery Rostokin (Messrs. Chubais, Kiselev,

10   Polikarpov, Rostokin, and Ms. Rapoport, collectively, the "Individual Defendants," and the

11   Corporate Defendants and the Individual Defendants, collectively, the "Foreign Defendants"),

12   will and hereby do move the Court to dismiss the First Amended Complaint, without leave to

13   amend, (a) under the doctrine of *forum non conveniens*; (b) for lack of personal jurisdiction

14   pursuant to Fed. R. Civ. P. 12(b)(2); and (c) against RUSNANO (or all the Corporate

15   Defendants), because RUSNANO (and each other Corporate Defendant, on Plaintiff's theory of

16   the case) enjoys sovereign immunity pursuant to Fed. R. Civ. P. 12(b)(1).

17          The Foreign Defendants also adopt and incorporate by reference the bases for dismissal

18   and arguments in Rusnano USA, Inc.'s Motion to Dismiss the First Amended Complaint

19   ("Rusnano USA's Motion"), including without limitation, that Plaintiffs' claims should be

20   dismissed pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1) and 12(b)(6).

21          The motion is based on this Notice of Motion, the following Memorandum of Points and

22   Authorities, the Declarations of Anatoly Chubais dated September 11, 2015 (Docket No. 35-6,

23   "First Chubais Decl."), Anatoly Chubais dated October 22, 2015 ("Second Chubais Decl."), Oleg

24   Kiselev dated September 7, 2015 (Docket No. 35-2, "Kiselev Decl."), Irina Rapoport dated

25   September 8, 2015 (Docket No. 35-1, "Rapoport Decl."), Sergey Polikarpov dated September 8,

26   2015 (Docket No. 35-3, "Polikarpov Decl."), Valery Rostokin dated September 8, 2015 (Docket

27   No. 35-5, "Rostokin Decl."), Professor Yevgeny Sukhanov dated September 8, 2015 (Docket No.

28

1   35-4, "Sukhanov Decl.") and any exhibits thereto, the argument of counsel, all pleadings, records

2   and papers on file, and such other matters as may be presented to the Court.

3                    **MEMORANDUM OF POINTS AND AUTHORITIES**

4   **I.      PRELIMINARY STATEMENT**

5           On September 11, 2015, all defendants moved to dismiss this action.  Rather than respond

6   to those motions, on October 9, 2015, 10 days before their response was due, Plaintiffs filed an

7   Amended Complaint (the "Amended Complaint").  However, the Amended Complaint

8   completely fails to remedy the numerous defects identified in Foreign Defendants' initial motion

9   to dismiss.  Indeed, Plaintiffs' new allegations consist largely of overheated and conclusory

10  rhetoric that is irrelevant to the substance of Plaintiffs' claims,[1] and provide no more of a basis for

11  proceeding in this Court than did the prior pleading.

12          It remains clear that this case does not belong in California, or, for that matter, in any

13  court in the United States.  Accordingly, Plaintiffs' Amended Complaint should be dismissed

14  under the doctrine of *forum non conveniens* in favor of proceedings in Russia, a far more

15  appropriate and convenient forum.  The gravamen of Plaintiffs' suit is their claim that Defendant

16  RUSNANO, a Russian state-owned company with its headquarters and principal operations in

17  Russia, deprived Plaintiffs of their indirect shareholding interest in a business whose only asset

18  was a factory in Irkutsk, a region in Siberia.  The Irkutsk plant was operated by a Russian limited

19  liability company, which was owned by another Russian company, the majority shareholder of

20  which was a closely held entity incorporated in Cyprus.  That Cypriot company, in turn, was

21  owned by nominal defendant Nitol Solar Limited, an entity formed under the laws of Bailiwick of

22  Jersey, in the Channel Islands ("Nitol Solar").  Plaintiff Neas Limited ("Neas"), a Cyprus

23  company with its registered office in Cyprus, held a minority stake in Nitol Solar, and Plaintiff

24  Tretyakov, who claims to be a Connecticut resident, is Neas' owner.

25

26

---

27  [1]   In particular, Plaintiffs spend nearly a page of their Amended Complaint making gratuitous
     and defamatory misstatements regarding Defendant Chubais' career as a Russian government
28   official and business executive, without making the slightest effort to link those accusations to
     the claims they purport to bring.  *See* Compl. ¶¶ 17-20.

FOREIGN DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:15-cv-01612-RMW

1    The actions challenged in the Amended Complaint involved exclusively foreign parties,

2    are alleged to have occurred almost entirely in Russia, and are governed largely by Russian law.

3    Accordingly, a Russian court is the appropriate venue for this suit.  Indeed, given the absence of

4    any connection to California, it is clear that this case is a particularly blatant example of forum

5    shopping, and could have been brought here only because Plaintiffs hope to coerce a settlement

6    through proceedings in the most inconvenient location possible.

7    Accordingly, this Court should dismiss Plaintiffs' Amended Complaint under the doctrine

8    of *forum non conveniens*, because all relevant private and public interest factors point to

9    dismissal.  Among other things, the majority of Corporate Defendants (including RUSNANO, the

10   only Corporate Defendant whose alleged conduct is set out in the Amended Complaint with  any

11   specificity at all) and all Individual Defendants are present and subject to process in Russia[2], and

12   most (if not all) potentially relevant witnesses and documentary evidence are located there.  The

13   Russian public interest in the dispute is also evident from the claims of misconduct made against

14   a company owned directly by the Russian state.  Indeed, Plaintiffs go so far as to accuse certain of

15   the Defendants of criminal conduct under Russian law, a matter of no interest to California, but

16   (assuming for the moment that such claims have any substance) a matter of vital public

17   importance to Russia.

18   Should the Court grant the Foreign Defendants' motion based on *forum non conveniens*, it

19   need not address the Foreign Defendants' alternative bases for dismissal, including lack of

20   personal jurisdiction.  The Corporate Defendants, all of whom are owned, directly or indirectly,

21   by the Russian Federation, are incorporated and maintain their principal places of business in

22   Russia or other jurisdictions outside of the United States.  The Individual Defendants all reside

23   exclusively in Russia.  Because none of the Foreign Defendants is present in California, and none

24   of the misconduct alleged in the remarkably long "Operative Facts" section in the Amended

25   Complaint is claimed to have occurred here, there is no basis for this Court's exercise of personal

26   jurisdiction.

27   _____

28   [2] In addition, each of the two Foreign Defendants that are corporations organized under non-Russian law will expressly submit to the jurisdiction of Russian courts.

The Court should dismiss Plaintiffs' statutory RICO and California Business & Professions Code Section 17200 claims for similar reasons.  Neither of those statutes applies to claims arising from conduct occurring outside the United States, for RICO claims, and California, for Section 17200.  Because all of the alleged conduct underlying Plaintiffs' claims occurred abroad, they cannot state a claim under either of these statutes.

Moreover, Plaintiffs simply lump together all of the Defendants, corporate and individual, in the Amended Complaint.  Such group pleading is not permissible, and the case should be dismissed on that basis as well, as explained in Rusnano USA's Motion.[3]

Finally, Plaintiffs' claims against RUSNANO, an instrumentality of the Russian State (and all the other Corporate Defendants, if the allegations in the Amended Complaint were assumed to be true), should be dismissed for the independent reason that RUSNANO and, on Plaintiffs' theory of the case, each other Corporate Defendant, enjoys sovereign immunity from suit in federal court pursuant to the Foreign Sovereign Immunities Act (the "FSIA").

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs' claims against the Foreign Defendants should be dismissed under the doctrine of *forum non conveniens*.

2.    If one or more of Plaintiffs' claims against the Foreign Defendants are not dismissed on other grounds, whether those claims should be dismissed for lack of personal jurisdiction over the Foreign Defendants.

3.    If one or more of Plaintiffs' claims against RUSNANO (or all Corporate Defendants) are not dismissed on other grounds, whether they should be dismissed because RUSNANO (or all Corporate Defendants) enjoys sovereign immunity from suit under the FSIA.

---

[3] The sole exception to the group pleading approach taken by Plaintiffs are the sixth and thirteenth claims for relief, which seek damages against Defendants Rostokin and/or Polikarpov for supposed breaches of their fiduciary duties to Nitol Solar in connection with Nitol Solar's default under a loan agreement and the consequent enforcement of a pledge of shares by Nitol Solar's lenders, including RUSNANO.  RUSNANO is a Russian state-owned company that enforced a pledge by Nitol Solar, a Bailiwick of Jersey company, of shares in a Cyprus company securing a ruble-denominated loan; the pledge agreement is governed by Cyprus law and provides for all disputes to be resolved in Moscow and, as described below,  Defendants Rostokin and Polikarpov are Russian citizens who live in Russia.  Like all of Plaintiffs' other claims, those two claims have absolutely no connection to California, factual or legal.

1   **III.   STATEMENT OF FACTS**

2       The following statement of facts is taken from Plaintiffs' Amended Complaint, except

3   where otherwise noted, and those allegations are assumed to be true solely for purposes of this

4   motion.

5       **A.   The Parties**

6       Plaintiff Tretyakov, who is either a former citizen of the Russian Federation or a holder of

7   dual Russian-U.S. citizenship, "formerly served as the Director of the Silicon Program for the

8   Russian Federal Agency for Atomic Energy" (presumably in Russia), and "at all times relevant

9   hereto" was one of the "principal architects" of Russia's polysilicon ("poli-Si") program, of

10  which the Irkutsk plant was a part. *See* Compl. ¶ 70.  He now claims to reside in the State of

11  Connecticut. *Id.* ¶ 43.

12      Plaintiff Neas is a Cyprus company with its registered office in Cyprus.  Compl. ¶ 42.

13  Tretyakov claims to be the ultimate beneficial owner of Neas. *Id.* ¶ 43.

14      Defendants RUSNANO and RMC are entities organized under the laws of the Russian

15  Federation, with their principal places of business in Moscow, Russia. Compl. ¶¶ 44-45.

16  RUSNANO is directly owned by the Russian Federation. *Id.* ¶ 44. RMC is a subsidiary of

17  RUSNANO. *Id.* ¶ 45.  Rusnano USA, Inc. ("Rusnano USA"), a Delaware corporation with its

18  principal place of business in California, is owned by RUSNANO and RMC. *Id.* ¶ 48.

19      Defendant Rusnano Capital, A.G. ("RCA"), a subsidiary of RUSNANO, is a Swiss

20  company with its registered office in Switzerland.  Compl. ¶ 46.  Defendant Rusnano Capital,

21  LLC ("RCL"), a Russian limited liability company with its principal place of business in

22  Moscow, Russia, is an indirect subsidiary of RUSNANO. *Id.* ¶ 47.  Defendant Fonds Rusnano

23  Capital, S.A. ("Fonds") is a Luxembourg company with its registered office in Luxembourg. *Id.*

24  ¶ 49.

25      Plaintiffs make no substantive allegations concerning RMC, RCA, RCL, Fonds, or

26  Rusnano USA at all, and merely lump them together with RUSNANO by referring to them as the

27  "Rusnano Group."  *See* Compl. ¶ 50.  Indeed, except for a few vague and wholly conclusory

28  allegations concerning alleged violations of Russian law and misuse of Russian public funds, *see*

*Id.* ¶¶ 88, 95-96, Plaintiffs do not allege any misconduct at all by the "Rusnano Group" in the "Operative Facts" section of their Amended Complaint.[4]

All of the Individual Defendants reside and work in Russia.  Compl. ¶¶ 51-52, 55-56; First Chubais Decl. ¶¶ 3-4; Kiselev Decl. ¶¶ 3-4; Rapoport Decl. ¶¶ 3-4; Rostokin Decl. ¶¶ 3-4; Polikarpov Decl. ¶ 4.   Defendants Chubais, Kiselev, and Rapoport are directors and officers of certain of the Corporate Defendants located in Russia.  Compl. ¶¶ 44-45, 47, 51-53.  Defendant Chubais is also alleged by Plaintiffs to be "one of the principal architects of Russian privatization following the collapse of the former Soviet Union."  *Id.* ¶ 51.  Defendant Polikarpov is alleged to be an employee of RUSNANO and a former board member of nominal defendant Nitol Solar Limited ("Nitol Solar").  *Id.* ¶ 55.  Defendant Rostokin is the former CEO of Nitol Solar.  *Id.* ¶ 56.

Plaintiffs likewise make few, if any, substantive allegations concerning Defendants Kiselev and Rapoport.  Instead, they merely lump those Defendants together with Chubais as "Rusnano Control Persons," and allege, in conclusory fashion, that the alleged "appropriation" of Plaintiffs' indirect equity interest in the Irkutsk plant resulted from "directives personally given" by them, and that they were "the architects of the fraudulent scheme described" in the Amended Complaint.[5]  *See, e.g.,* Compl. ¶¶ 54, 124.

**B.**    **The Nitol Plant In The Russian Region Of Irkutsk, Siberia**

Nominal defendant Nitol Solar formerly operated a manufacturing plant (the "Nitol Plant") producing a product known as polysilicon ("poly-Si") in Irkutsk Region, Russia.  Compl. ¶ 71.  The Nitol Plant, an adjunct of a larger Soviet-era chemical plant, was acquired at some point by a group of investors that included Plaintiff Neas.  *Id.* ¶¶ 72-74.

---

[4]  Plaintiffs refer to Rusnano Management, RCA, RCL and Fonds by name only a handful of times, and then only (i) in allegations describing their places of incorporation, (ii) allegations describing their places of business or the alleged relationships among the defendants, (iii) conclusory allegations related to RUSNANO's supposed exercise of "dominion and control" over these entities, and (iv) the *ad damnum* clauses.  *See, e.g.,* Compl. ¶¶ 45-50, 53, 63(a)(xv).

[5]  Defendant Sherigo Resources ("Sherigo") is a company organized under the laws of the British Virgin Islands, which maintains offices in the British Virgin Islands.  Compl. ¶ 58.  Sherigo, which has neither been served nor has it appeared in this action, is claimed to now hold the interests in the Nitol Plant previously held by RUSNANO.

### C.      The RUSNANO Investment

In or around 2009, Nitol Solar obtained additional capital to modernize the Nitol Plant by entering into two revolving credit facilities, one with RUSNANO for 4.5 billion Russian rubles and a larger one with another Russian lender, Alfa bank.[6]  Compl. ¶ 86.  RUSNANO acted as the lead lender and allegedly nominated Defendant Polikarpov, a Russian citizen and resident, as one of Nitol Solar's directors.  *Id.* ¶¶ 91, 93.

At that time, ownership of the Nitol Plant was restructured so that OOO Usolye-Sibirsky Silicon, a Russian limited liability company that operated the plant, was owned by OOO Nitol Group ("Nitol Group"), another Russian limited liability company.  Compl. ¶ 87.  In turn, virtually all of Nitol Group was owned by INSQU Production, Ltd. ("INSQU"), a closely-held Cyprus company, which was itself owned by nominal defendant Nitol Solar, a company organized under the laws of Bailiwick of Jersey.  *Id.* ¶ 87.  Plaintiffs allege that Neas' initial stake in the Nitol Plant was converted into shares of Nitol Solar as part of the restructuring.  *Id.* ¶¶ 87, 89.  As security for the credit extended by RUSNANO and Alfa Bank, Nitol Solar pledged its INSQU shares to RUSNANO as collateral.  *Id.* ¶ 91.

### D.      Pledge Enforcement By RUSNANO

The gravamen of Plaintiffs' Amended Complaint is that RUSNANO appointed two "insiders" to the board of nominal defendant Nitol Solar, a Bailiwick of Jersey company.  Plaintiffs claim that those "insiders," both Russian citizens who reside and work in Russia, at the direction of RUSNANO, mismanaged the company's sole asset, the factory in Siberia, and, while creating expectations of RUSNANO's waiver of default, engineered Nitol Solar's default on the loan owed to RUSNANO and Alfa Bank.  *See, e.g.,* Compl. ¶¶ 4-13.

Plaintiffs complain that RUSNANO then acquired Nitol Solar's indirect interest in the Siberian plant through the foreclosure of the INSQU shares that Nitol Solar had pledged as collateral for the RUSNANO loan.  Compl. ¶¶ 109-118 (purporting to describe the  "RUSNANO

---

[6]   Although Plaintiffs refer to Nitol Solar's other lender as "Alpha", the loan documents referenced in the Amended Complaint refer to "Alfa Bank," a well-known banking institution headquartered in Moscow, Russia.  *See* http://alfabank.com/russia/.

1    Takeover" involving, *inter alia*, representations made by Nitol Solar's Russian CEO to Nitol

2    Plant managers in Irkutsk, travel to Irkutsk, and a subsequent restructuring of Nitol Solar's debt

3    through a lending syndicate that included Sberbank of Russia, a Russian state-owned bank)[7].

4          Plaintiffs do not claim that any of this alleged misconduct occurred in California or

5    elsewhere in the United States.  Generously construed, the only factual allegations of U.S.

6    conduct concern supposed "assurances" given to Plaintiff Tretyakov of RUSNANO's intention to

7    provide additional financing to Nitol Solar, and discussions that Tretyakov allegedly had with

8    unidentified RUSNANO representatives concerning "the future prospects of the Nitol Plant" at

9    unspecified "solar and photovoltaic industry conferences in, *inter alia*, the United States" at some

10   unspecified time in 2010, a year before the alleged misconduct.  Compl. ¶ 99.

11   **IV.**    **ARGUMENT**

12       **A.**    **The Court Should Dismiss This Action On Grounds Of *Forum Non***

13              ***Conveniens***

14         Under the doctrine of *forum non conveniens*, this Court has discretion to dismiss a suit,

15   "where litigation in a foreign forum would be more convenient for the parties."  *See, e.g., Lueck*

16   *v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  "A district court … may dispose of an

17   action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal

18   jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."

19   *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 432 (2007).  In

20   evaluating a case for *forum non conveniens* dismissal, the Court must consider whether:  (i) an

21   adequate alternative forum exists, and (ii) the balance of private and public interest factors favors

22   dismissal.  *Id.*  Here, the bedrock principles of the *forum non conveniens* doctrine support

23   dismissal in favor of a Russian forum.

24

25

26

---

27   [7] The pledge agreement contains a broad arbitration clause providing for the resolution of all disputes in Moscow under the rules of the Moscow Chamber of Commerce and Industry. *See* First Chubais Decl. ¶ 28; Exhibit 2.  The Foreign Defendants expressly reserve their right to move

28   to enforce this and the other similar arbitration agreements if this case is not dismissed.

1.     **Russia Is An Adequate Alternative Forum For Plaintiffs' Claims**

An alternative forum exists when defendants are amenable to service of process in the foreign forum, and is adequate if it provides plaintiffs with a remedy for the injuries alleged in their Amended Complaint, even if it is a "lesser remedy than would likely be obtained here in the United States." *Ruelas Aldaba v. Michelin North Am., Inc.*, 04-5369 MHP, 2005 WL 3560587, at *4 (N.D. Cal. Dec. 29, 2005), citing *Lueck*, 236 F.3d at 1144. Moreover, "[it] is only in rare circumstances where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Id. quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

In this case, all Individual Defendants reside in Russia, and most of the Corporate Defendants are incorporated and maintain their principal offices in Russia, and are subject to process there. As to the remainder, although they are not alleged to have physical presence either in the United States or in Russia, they consent to having Plaintiffs' claims against them adjudicated in Russia. Rapoport Decl. ¶ 24.

Further, as discussed at length in the Sukhanov Declaration, Russia is an adequate alternative forum for Plaintiffs' claims because Russian law recognizes causes of action analogous to those asserted here, and Russian courts will afford Plaintiffs a full and fair hearing on all of their claims, providing Plaintiffs with adequate remedies should they prevail. Sukhanov Decl. ¶¶ 21-34, 35. Numerous federal courts have reached the same conclusion, recognizing Russia as an adequate alternative forum for RICO and other claims similar to those in the Amended Complaint. *See, e.g., Conn v. Zakharov,* 667 F.3d 705 (6h Cir. 2012); *Base Metal Trading Ltd. v. Russian Aluminum,* 98 Fed. App'x 47, 2004 U.S. App. LEXIS 8547 (2d Cir. April 30, 2004); *Freidzon v. Lukoil et al.*, 14 Civ. 5445 (AT), 2015 U.S. Dist. LEXIS 32040, at *18-*19 (S.D.N.Y. Mar. 12, 2015) (collecting cases); *Ambriz Trading Corp. v. Uralsib Fin. Corp.,* 11 Civ. 4420 (SAS), 2011 U.S. Dist. LEXIS133928 (S.D.N.Y. Nov. 21, 2011); *Pavlov v. The Bank of New York Co.,* 135 F. Supp. 2d 426 (S.D.N.Y., 2001).

1          **2.      The Balance Of Private And Public Interest Factors Favors Dismissal**

2              Plaintiff Neas is a Cypriot company with its registered office in Cyprus, and does not

3      allege that it has any presence in or connection to California or anywhere else in the United

4      States.  Plaintiff Tretyakov, although now allegedly a U.S. citizen, does not reside in California,

5      and does not claim to have any contacts with the State.  Indeed, none of the claims asserted in the

6      Amended Complaint bears any relation to this State.

7              In the absence of a California plaintiff and any nexus between this State and Plaintiffs'

8      claims, Plaintiffs' choice to bring suit in this forum should be given little or no deference.  *See*

9      *Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1092 (9th Cir. 1998) (affirming

10     district court's *forum non conveniens* dismissal and granting less deference to California

11     plaintiffs' choice to bring suit in Hawaii, a State that had no relation to plaintiffs' claims); *Leuck*,

12     236 F.3d at 1145 (foreign plaintiffs "are entitled to less deference" for their choice of a forum).

13             The Court should afford even less deference to Plaintiffs' choice of forum if it concludes

14     that they are forum shopping, as is clearly the case here.[8]  *Ranza v. Nike, Inc.*, 793 F.3d 1059,

15     1077 (9th Cir. Jul. 18, 2015) ("inference" of forum shopping "permits us to defer less to

16     [plaintiff's] choice of forum"); *Marshall v. Monster Bev. Corp.*, 14–cv–02203, 2014 WL

17     3870290, at *2 (N.D. Cal. Aug. 6, 2014) ("A plaintiffs' forum choice gets even less deference

18     when there are signs of forum shopping.")

19            **a.      The Private Interest Factors Favor Dismissal**

20             The relevant private interest factors include:  (1) the residence of the parties and

21     witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other

22     sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

23     bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical

24     problems that make a trial of a case easy, expeditious and inexpensive.  *Leuck*, 236 F.3d at 1145.

25     Although the Ninth Circuit requires the Court to consider all factors together "in arriving at a

26

---

27     [8] That conclusion is reinforced by the joinder of Rusnano USA as a defendant; while, alone
           among all parties in this case, it is present in California, the Amended Complaint does not
28         allege a single specific act or transaction involving Rusnano USA.

FOREIGN DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:15-cv-01612-RMW

1    balanced conclusion," *id.*, no balancing is necessary here because all factors favor dismissal. *See*

2    *generally Dibdin v. South Tynside NHS Healthcare Trust*, CV 12–00206 DDP, 2013 WL 327324,

3    at *5 (C.D. Cal. Jan. 29, 2013) ("Generally, the private factors will weigh in favor of a foreign

4    forum when essentially all the events giving rise to a suit occur there").

5         Other than Defendant Rusnano USA – which is not alleged to have played any role in the

6    events giving rise to Plaintiffs' claims – no party resides, is incorporated in, or maintains an office

7    in California.  Rather, Plaintiffs concede that all of the Individual Defendants reside and work in

8    Russia,[9] and all of the other Defendants are headquartered in Russia, with the exception of a few

9    corporate entities that are not alleged to have played any role in the alleged misconduct.   Compl.

10   ¶¶ 44-58; First Chubais Decl. ¶¶ 3-4; Rapoport Decl. ¶¶ 3-4; Kiselev Decl. ¶¶ 3-4; Rostokin Decl.

11   ¶¶ 3-4; Polikarpov Decl. ¶¶ 4-5.   Because the Foreign Defendants' conduct is at issue in this

12   case, those defendants and their employees with potentially relevant knowledge will be the most

13   important witnesses in the case.  *See Sarandi v. Breu*, C 08–2118 SBA, 2009 WL 2871049, at *7

14   (N.D. Cal. Sept. 2, 2009) (officers and directors of Swiss company are "most important

15   witnesses" in shareholder derivative action).

16        The California forum is inconvenient for all parties.  Plaintiff  Neas' office is in Cyprus,

17   *see* Compl. ¶ 42, an island country in the Mediterranean thousands of miles from California.

18   Likewise, Plaintiff Tretyakov, although now allegedly a resident of Connecticut, claims to be "at

19   all times relevant hereto" "one of the principal architects of Russia's poli-Si program" (*id.* ¶ 70),

20   and could fly east to Moscow with little more difficulty than he can fly west to California.  On the

21   other hand, travel to California will place undue personal and professional burdens on the

22   Individual Defendants, who all live and work thousands of miles away. All the Individual

23

24   [9] With respect to Defendants Chubais, Polikarpov and Rostokin, the Amended Complaint
     expressly states that they work in Russia. Compl. ¶¶ 51, 55, 56.  With respect to Defendant
25   Rapoport, the Amended Complaint, while alleging her status as a U.S. citizen and/or permanent
     resident, does not allege any connection to California after she received an MBA here roughly 20
26   years ago.  *Id.* at ¶ 53, Rapoport Decl. ¶ 5.  Moreover, the Amended Complaint admits that
     Defendants Rapoport and Kiselev hold high positions at the Russian Corporate Defendants,
27   Compl. ¶¶ 44-45, 47, 52-53, which by their nature require them to work and reside in Russia.  In
     any event, having been named among "the architects of the fraudulent scheme" (*id.* ¶ 54), they are
     thereafter completely ignored in the Amended Complaint.

28

1  Defendants and witnesses would be separated from their homes and families for the hearing, and

2  many of the Individual Defendants are senior officers of large companies.  Mr. Chubais', Ms.

3  Rapoport's and Mr. Rostokin's duties as chief executive officers of their respective companies

4  require their presence in Russia, and having to attend a lengthy trial in California would seriously

5  interfere with those duties.  First Chubais Decl. ¶ 14; Second Chubais Decl. ¶¶ 2-5; Rapoport

6  Decl. ¶ 15;  Rostokin Decl. ¶ 14.[10]

7       Because the majority of the parties and witnesses reside in Russia, and not a single

8  California witness is identified in the Amended Complaint, Russia is a more convenient—indeed,

9  the only logical—forum.  *See, Dibdin*, 2013 WL 327324, at *4 (private factors favored dismissal

10  where "every Defendant would have to travel to California" for the case and "many of them [had]

11  essentially no connection to [California]").

12       With regard to the third factor, access to sources of proof, Plaintiffs' claims all arise from

13  RUSNANO's business relationship with Nitol Solar.  Because that relationship was created and

14  centered in Russia, any potentially relevant documentary evidence and witnesses are located

15  there.  Indeed, the so-called "Takeover Notice," attached as Exhibit G to Plaintiffs' Amended

16  Complaint, was sent from RUSNANO's Moscow headquarters.  All documents concerning

17  RUSNANO's loan to Nitol Solar, and other potentially relevant evidence and witnesses, are in

18  Russia.  First Chubais Decl. ¶¶ 19-21; *see also* Rostokin Decl. ¶ 13; Polikarpov Decl. ¶ 14.

19  Accordingly, this factor also favors dismissal.  *Sarandi*, 2009 WL 2871049, at *7 (*forum non*

20  *conveniens* dismissal in shareholder derivative action where "documents pertaining to the

21  knowledge of [corporate] officers and directors [were] maintained in [the foreign forum].");  *see*

22  *also Leetsch v. Freedman*,  260 F.3d 1100, 1104 (9th Cir. 2001) (dismissal where events giving

23  rise to claim "occurred in [foreign forum]," and "most sources of evidence on the issues will

24  likely be located [there]" ); *Contract Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d

25

---

26  [10]  In a futile attempt to improve their case, Plaintiffs make an unsupported statement that
       Defendant Chubais "is in the United States on a monthly basis." Compl. ¶ 65.  Putting to one
27     side that any such trips would be irrelevant here, the claim is false.  Defendant Chubais has
       not been to the United States since April 2014, and in California since September 2013.
28     Second Chubais Decl. ¶¶ 2-5.

1446, 1452 (9th Cir. 1990) (dismissal where "[e]vidence that will illuminate the liability issues is largely unavailable in the United States.")

Because they reside abroad (and, in many cases, are no longer employed by RUSNANO or its affiliates), the witnesses with potentially relevant knowledge are beyond this Court's subpoena power. *See* First Chubais Decl. ¶ 21. In any case, given that many or all of the potential witnesses—including all of the Individual Defendants—reside in Russia, the parties would have to bear the additional cost of transporting them to California for trial. For Russian citizens, travel to California would require visas. The process to obtain such a visa can involve significant inconvenience, including a lengthy application and an interview,[11] and there is no guarantee that a visa will actually be issued.[12] Requiring those witnesses who do not have current U.S. visas go through that process and travel thousands of miles away from their jobs and families to a foreign forum for litigation about events that occurred entirely in Russia defies logic and common sense.

Thus, the fourth and fifth factors (*i.e.*, whether unwilling witnesses can be compelled to testify, and the cost of bringing witnesses to trial), both favor dismissal. *Leuck*, 236 F.3d at 1146-47 (dismissal where the "district court does not have the power to order the production or appearance of [third party] evidence and witnesses"); *Reimer v. Corp. de Viajes Mundiales S.A.*, 14–cv–00147, 2014 WL 5492774, at *8 (N.D. Cal. 2014) (dismissal where "crucial witnesses… will be beyond the court's subpoena power"); *Dibdin*, 2013 WL 327324, at *5 (dismissal where "[t]he cost of bringing Defendants to the United States will be greater than transporting Plaintiff to [foreign forum]").

With respect to the enforceability of the Court's judgment, the sixth factor, Professor Sukhanov confirms that, because foreign court judgments are generally not enforceable in Russia in the absence of an international treaty, Plaintiffs could not enforce a U.S. judgment against the Foreign Defendants in Russia, where all Individual Defendants reside and most of the Corporate

---

[11] See, e.g., http://www.ustraveldocs.com/ru/ru-niv-visaapply.asp.

[12] According to the website for the Embassy of the United States in Moscow, Russia, "no assurance regarding the issuance of non-immigrant visas can be given in advance."

1   Defendants are headquartered.  Sukhanov Decl. ¶ 35.  On the other hand, a judgment rendered in

2   Plaintiffs' favor by a Russian court would certainly be enforceable in Russia.  *Id.*  Accordingly,

3   this factor favors dismissal.  *Sarandi*, 2009 WL 2871049, at *7 (dismissal where "a judgment

4   rendered in this Court may not be enforceable in [foreign fora], where all but two of the

5   Individual Defendants reside.")

6          Lastly, there are practical problems with proceeding with this case in this forum as

7   opposed to a Russian court.  In particular, RUSNANO's business, and the business of its Russian

8   subsidiaries, is conducted principally in the Russian language.  First Chubais Decl. ¶ 19;

9   Rapoport Decl. ¶ 23.  Likewise, most of Russian Corporate Defendants' officers, directors, and

10  employees are not native English speakers.  First Chubais Decl. ¶ 19; Rapoport Decl. ¶ 23; *see*

11  *also* First Chubais Decl. ¶ 20; Polikarpov Decl. ¶ 14; Rostokin Decl. ¶¶ 13, 15.  In any proceeding

12  in this Court, their testimony will likely have to be rendered through an interpreter.  On the other

13  hand, Plaintiff Tretyakov is a native Russian speaker, and would have no difficulties participating

14  in proceedings in Russia.  The cost of translating potentially relevant documentary evidence for

15  review and production, First Chubais Decl. ¶¶ 19-20, as well as the use of an interpreter at

16  depositions and trial, would place unnecessary burdens on the parties and this Court.  Thus, the

17  last private factor favors a *forum non conveniens* dismissal as well.  *See Martinez v. White*, 492 F.

18  Supp. 2d 1186, 1192 (N.D. Cal. 2007) (where "nearly all documents and testimony will have to

19  translated" California is "an especially inconvenient forum").  All of the private factors favor

20  dismissal of this action.

21          **b.      The Public Interest Factors Favor Dismissal**

22          In addition to the private interest factors, the Court must also consider public interest

23  factors, including (1) local interest of the lawsuit; (2) the court's familiarity with governing law;

24  (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving

25  a dispute unrelated to California in this forum.  *Leuck*, 236 F.3d at 1147.

26          Those factors all weigh in favor of dismissal.  First, there is no "local interest" at all here,

27  but significant foreign interest in this suit.  Neither the Plaintiffs, nor any of the Defendants

28  alleged to have engaged in any misconduct, reside in California, and the State's interest in

adjudicating the case is non-existent. *See Leuck*, 236 F.3d at 1147 (public interest favored dismissal where none of the plaintiffs and only one of the defendants was a citizen of the chosen forum). In contrast, the Russian Federation's interest in remedying the alleged misconduct of a major state-owned enterprise and its senior executives, following an investigation by a state agency, is very significant. *Dibdin*, 2013 WL 327324, at *6 (foreign forum has "very strong interest" where "events giving rise to Plaintiff's claim occurred there" and plaintiff "challenge[d] the integrity of two [] governmental institutions…"); *Leuck*, 236 F.3d at 1147 (foreign forum's interest is "extremely high" where the events giving rise to the suit, and "investigation, post-investigation, and various legal proceedings including an ongoing criminal probe," occurred in foreign forum). Indeed, the allegations of the Amended Complaint confirm that Russia has by far the predominant public  interest here by referring to supposed investigations and criminal charges of RUSNANO or its executives by the Russian authorities. Compl. ¶¶ 35, 120-123.

With the exception of Plaintiffs' untenable RICO and California statutory claims, which should be dismissed for the reasons discussed in Rusnano USA's Motion, all of Plaintiffs' claims will be governed by Russian or other foreign law—that is, Jersey, English or Cyprus law[13]. Although the Court is certainly capable of adjudicating such claims, doing so would impose unnecessary burdens on it. *See  Piper Aircraft*, 454 U.S. at 260 & n. 29; *Dibdin*, 2013 WL 327324, at * 6 ("The likelihood of applying [foreign] law weighs in favor of dismissal"). A Russian court is obviously more familiar with Russian law, and is equally capable of applying Jersey, English or Cyprus law, if necessary. Sukhanov Decl. ¶¶ 33-34.

Because of the minimal – actually non-existent – "local interest" in this case, the remaining public interest factors, the burden on local courts and the costs associated with resolving the dispute, also favor dismissal. *See Leuck*, 236 F.3d at 1147 (public interest favored dismissal where "local interest" was "slight compared to the time and resources the [Court] would

---

[13] Because Plaintiff Neas' claims are derivative, it would have to meet the requirements of Jersey law for asserting a claim by a shareholder for injury to the corporation. Plaintiff Tretyakov's claims are "double derivative", and he would have to meet to the requirements of both Cyprus law (the law of incorporation of Neas) and Jersey law (the law of incorporation of Nitol Solar). The Foreign Defendants expressly reserve their rights to seek relief based on such issues in the event of further litigation, here or elsewhere.

1    expend if it were to retain jurisdiction over this dispute"); *Dibdin*, 2013 WL 327324, at *7 (where

2    case turned on events occurring in a foreign forum "that forum should bear the burden and costs

3    of Plaintiff's suit").  Accordingly, all factors, public and private, strongly favor a *forum non*

4    *conveniens* dismissal, and the Court should dismiss the case on that ground, without any need to

5    address other grounds for dismissal.

6    **B.**    **The Court Should Dismiss The Amended Complaint As To All Of The Foreign Defendants For Lack Of Personal Jurisdiction**

7

8        This Court also lacks either general or specific personal jurisdiction over any of the

9    Foreign Defendants.  As the parties invoking this Court's jurisdiction, Plaintiffs bear the burden

10   of making a *prima facie* showing that it exists; that is, they must "demonstrate facts that if true,

11   would support jurisdiction over the defendant."  *Sterwart v. Screen Gems-EMI Music, Inc.*, 14-cv-

12   04805-JSC, 2015 WL 890994, at *5 (N.D. Cal. Mar. 2, 2015).  Conclusory jurisdictional

13   allegations, without supporting facts, are insufficient.  *Bui v. Golden Biotech. Corp.*, 13-CV-

14   04939-EJD, 2014 WL 4072112, at *2 (N.D. Cal. Aug. 14, 2014).  Plaintiffs' allegations fall far

15   short of that standard.

16   **1.**    **Plaintiffs Do Not Allege And Cannot Establish General Jurisdiction Over Any Of The Foreign Defendants**

17

18       General jurisdiction exists when a corporate defendant's contacts "are so continuous and

19   systematic as to render [it] essentially at home in the forum State, *i.e.*, comparable to a domestic

20   enterprise in that State."  *Ranza*, 793 F.3d at 1069; quoting *Daimler AG v. Bauman*, 134 S.Ct.

21   746, 758 n.11 (2014).  "For an individual, the paradigm forum for the exercise of general

22   jurisdiction is the individual's domicile," (*i.e.*, permanent residence).  *Id.* 760.  Specific

23   jurisdiction exists when the claims arise out of or relate to the defendant's contacts with the forum

24   state.  *Allegro Consultants, Inc. v. Wellington Tech., Inc.*, 13-cv-02204-BLF, 2014 WL 4352344,

25   at *3 (N.D. Cal. Sept. 2, 2014).  To satisfy the requirements of due process, "the defendant's suit-

26   related conduct must create a substantial connection with the forum State."  *Id.*

27       Plaintiffs do not and cannot allege that any of the Corporate Defendants is "essentially at

28   home" in California.  Plaintiffs acknowledge that the Corporate Defendants are all foreign entities

owned, directly or indirectly, by the Russian State and incorporated under foreign law, with no place of business in California or elsewhere in the United States. Compl. ¶¶ 44-47, 49. Those Defendants have no presence in California, and certainly do not have sufficient contacts to be "essentially at home" in this State. *See* First Chubais Decl. ¶¶ 15-23, 27; Rapoport Decl. ¶¶ 19-22. Because the Corporate Defendants are not "at home" in California, this Court lacks general jurisdiction. *Daimler*, 134 S. Ct. at 752 (no jurisdiction where defendant was not incorporated or did not maintain its principal place of business in California); *Ranza*, 793 F.3d at 1069-70 (same).

Similarly, Plaintiffs apparently concede that the Individual Defendants all reside and work in Russia and do not, and could not, allege that any Individual Defendant is domiciled in California. Compl. ¶¶ 44-45, 47, 51-53, 55-56. None of the Individual Defendants resides in California or has other any other meaningful contacts with the State. First Chubais Decl. ¶¶ 3-14; Second Chubais Decl. ¶¶ 2-5; Rapoport Decl. ¶¶ 3-15; Kiselev Decl. ¶¶ 3-13; Rostokin Decl. ¶¶ 3-14; Polikarpov Decl. ¶¶ 4-14. The Individual Defendants' very limited contacts with California, amounting to a few brief trips to the State over a period of years, cannot possibly establish general jurisdiction. *Allegro*, 2014 WL 4352344, at *4, *6 (no personal jurisdiction where defendants' contacts with California were limited to brief trips to the state); *King v. Meek*, 14–cv–02079–AWI–GSA, 2015 WL 3660199, at *4 (E.D. Cal. Jun. 11, 2015) (dismissing case where "Defendant is not domiciled in California and therefore is not subject to the Court's general jurisdiction").

## 2.   Plaintiffs' Attempt To Avoid Dismissal By Imputing Rusnano USA's Contact With California To Other Corporate Defendants Fails

To avoid dismissal, Plaintiffs seek to impute the California presence of Rusnano USA, RUSNANO's indirect U.S. subsidiary, to every other Corporate Defendant, described by Plaintiffs as the "Rusnano Group," without attributing that alleged contact to any one Defendant. Compl. ¶ 63 (alleging that the "Rusnano Group" "openly promotes … its Silicon Valley office," by which they apparently mean the office of Rusnano USA, "caused RUSNANO USA to be qualified as a California corporation; appointed a California-based registered agent for service of process;" receives requests for financing and solicits capital from the U.S.; invests in California

1    and the U.S. companies, and projects located in the U.S., and "exercises substantial control over

2    the affairs" of the U.S. companies in which it has a stake). *Id.* ¶¶ 44, 63.

3        The Supreme Court and the Ninth Circuit have all consistently found that contacts similar

4    to (or substantially greater than) those alleged by Plaintiffs are wholly insufficient for the exercise

5    of general jurisdiction.  In *Ranza v. Nike, Inc.*, for example, the foreign defendant frequently sent

6    its employees on "expatriate assignments" and business meetings at its U.S. corporate parent's

7    offices in Oregon, the parent acted as its subsidiary's "agent in various business arrangements,"

8    and the subsidiary's products were sold in Oregon stores.  793 F.3d at 1069.  The Ninth Circuit

9    held that "[i]n contrast with [defendant's] extensive contacts in Europe, where the vast majority

10   of its employees and business activities are located, the company's limited activities in Oregon do

11   not render it 'essentially at home' there." *Id.* at 1070; *see also Daimler*, 134 S. Ct. at 752 (no

12   jurisdiction over foreign corporate defendant even though its subsidiary had "multiple California-

13   based facilities," and was, *inter alia*, "the largest supplier of luxury vehicles to the California

14   market").  The same result should follow here.

15       Plaintiffs' conclusory allegation that Rusnano USA is RUSNANO's alter ego does not

16   provide a basis for the exercise of personal jurisdiction here. The rule is that "[a] parent's mere

17   ownership of a subsidiary does not confer personal jurisdiction over the parent." *Bui*, 2014 WL

18   4072112, at *2.  While it is true that, under narrow circumstances not present here,  an entity's

19   jurisdictional contacts may be "imputed" to its parent company for purposes of establishing

20   general jurisdiction if the subsidiary is a corporate *alter ego, AT&T v. Compagnie Bruxelles*

21   *Lambert*, 94 F.3d 586, 591 (9th Cir. 1996), the rule is that, in order to establish jurisdiction based

22   on a *alter ego* status, Plaintiffs must "make out a *prima facie* case (1) that there is such unity of

23   interest and ownership that the separate personalities of [Rusnano USA] and [the other Corporate

24   Defendants] no longer exist and (2) that failure to disregard [their separate identities] would result

25   in fraud or injustice." *Id.*

26       Plaintiffs do not and cannot satisfy either prong of this test.  To begin with, Plaintiffs'

27   *alter ego* allegations are entirely conclusory, and even then made mostly upon information and

28   belief.  What they lack in specificity, however, Plaintiffs seek to make up through accusatory

1    rhetoric.  They allege, for example, that Rusnano USA was "dominated and controlled by

2    RUSNANO;" that its unspecified "affairs and financial dealings" were "intertwined with those of

3    RUSNANO;" that "Rusnano USA's assets and liabilities are completely inseparable from those

4    of RUSNANO;" that RUSNANO and Rusnano USA do not maintain unnamed "formalities

5    required to recognize them as separate legal entities," and that Rusnano USA's funds have been

6    "intermingled with those of RUSNANO."  *See* Compl. ¶ 63; *see also id.*, at ¶¶ 216-218.

7    Incredibly, without any factual support whatsoever, Plaintiffs also allege, in wholly conclusory

8    fashion, that RUSNANO used its US subsidiary to "transfer profits gained from the illegal

9    takeover of Nitol Solar and the Nitol Plant… into California…"  Rhetoric aside, those allegations

10   amount to a claim that RUSNANO has funded its subsidiary, which, if true, would be irrelevant

11   for jurisdictional purposes.  It has long been established that "it is proper for parent to provide all

12   financing to a subsidiary." *E.g., Hillsborough Holdings Corp.,* 166 B.R. 461, 473-74 (Banker

13   M.D. Fla. 1994), aff'd 176 B.R. 223 (M.D. Fla. 1994).

14        Plaintiffs' unsubstantiated conclusory allegations are insufficient, individually or

15   collectively, to establish the "unity of interest and ownership" that could give rise to alter ego

16   liability.  As this Court succinctly explained, '[w]hile a district court draws all reasonable

17   inferences in favor of plaintiff when determining a motion to dismiss, the court need not assume

18   mere conclusory allegations to be true." *Bui v. Golden Biotech. Corp.*, 13-cv-04939-EJD, 2014

19   WL 4072112, at *2 (N.D. Cal. Aug. 14, 2014).  In *Bui*, the Court declined to exercise jurisdiction

20   based on an alter ego theory, noting that conclusory allegations that parent "dictates the daily

21   operations of its domestic subsidiary", without evidence, are insufficient to establish jurisdiction

22   on an *alter ego* theory.  The allegations in the Amended Complaint are equally lacking in factual

23   matter, and should similarly be disregarded.

24        Indeed, Plaintiffs' conclusory allegations do nothing to overcome the presumption that

25   RUSNANO and RMC have ordinary parent-subsidiary or sister corporation relationships with

26   Rusnano USA and that RUSNANO and that the other Corporate Defendants each maintain a

27   distinct corporate personality.   Of course, even a parent-subsidiary relationship that, like most

28   such relationships, involves some measure of control on the part of the parent is not sufficient to

1   pierce the corporate veil for jurisdictional purposes.  *See Ranza*, 793 F.3d at 1073 (to satisfy the

2   "unity of interest and ownership prong" requires "pervasive control over the subsidiary, such as

3   when a parent corporation 'dictates every facet of the subsidiary's business… … Total ownership

4   and shared management personnel are alone insufficient to establish the requisite level of

5   control.")

6        In *Ranza,* the Ninth Circuit declined to find personal jurisdiction on an *alter ego* theory

7   where a foreign corporate entity's U.S. parent was "heavily involved" in its operations,

8   "exercise[d] control over [the foreign subsidiary's] overall budget … ha[d] approval authority for

9   large purchases; establishe[d] general human resource policies…  [was] involved in some hiring

10  decisions; operate[d] information tracking systems … its subsidiaries utilize; …. ensure[d] [that]

11  the [corporate] brand [was] marketed consistently throughout the world; and require[d] some [of

12  the foreign subsidiary's] employees to report to [the parent's] supervisors…"  793 F.3d at 1073.

13  The Court noted that "[a] parent corporation may be directly involved in financing and macro-

14  management of its subsidiaries ... without exposing itself to a charge that each subsidiary is

15  merely its alter ego."  *Id.* at 1074; *AT&T,*  94 F. 3d at 591 (allegations that representatives of a

16  parent company regularly attended board meetings, included the subsidiary on consolidated tax

17  returns, and held a majority of seats on subsidiary's board (including that of chairman) did not

18  suffice to pierce the corporate veil); *Kramer v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th

19  Cir. 1980) (no alter ego relationship even though the parent guaranteed subsidiary's obligations,

20  "reviewed and approved its major policy decisions," had "general executive responsibility for the

21  operation" of the subsidiary, placed several of its own directors on the subsidiary's board, and

22  "work[ed] closely" with the subsidiary on pricing decisions for products sold in U.S.); *Bui*, 2014

23  WL 4072112, at *2 ("monitoring the subsidiary's performance, supervising the subsidiary's

24  finance and capital budget decisions, and articulating general policies and procedures of the

25  subsidiary" did not establish alter ego status for jurisdictional purposes) *citing Doe v. Unocal

26  Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

27       The Amended Complaint does not allege any facts that would show that RUSNANO and

28  RMC's relationships with Rusnano USA are even as close as those of the corporate defendants in

1 | *Ranza* and the many other instances cited above where courts declined to pierce the corporate veil

2 | to exercise jurisdiction.  As the Court of Appeals did in *Ranza*, this Court should find it lacks

3 | personal jurisdiction over RUSNANO and the other Foreign Defendants.

4 | In addition to their failure to allege facts sufficient to satisfy the first prong of the Ninth

5 | Circuit's jurisdictional test, Plaintiffs allege no facts relevant to the second prong of the test, that

6 | "failure to disregard [the Corporate Defendants' separate identities] would result in fraud or

7 | injustice."  The Court should decline their invitation to pierce Rusnano USA's corporate veil for

8 | this reason as well.

9 | Similarly, Plaintiffs' conclusory allegation that Rusnano USA is RUSNANO's agent does

10 | not suffice for establishing general jurisdiction.  Plaintiffs refer to a statement at RUSNANO's

11 | website that Rusnano USA "represents the interests of RUSNANO… in the United States."

12 | Compl. ¶ 31.  In a recent case where a similar attempt was made to establish jurisdiction in

13 | California over a Russian bank, the court held: "As evidence that VTB Bank exercises control

14 | over VTB Capital, plaintiff proffers only excerpts from VTB Group's website and VTB Bank's

15 | consolidated financial statements.  [...] [They] does not suggest the type of control over daily

16 | affairs that is required to find an agency relationship."  *Barantsevich v. VTB Bank*, *et al.*, 954 F.

17 | Supp. 2d 972, 986 (C.D. Cal. 2013) citing *Unocal*, 248 F.3d at 920.

### 3. Plaintiffs Cannot Establish Specific Jurisdiction Over Any Of The Foreign Defendants

20 | Specific jurisdiction exists when the claims arise out of or relate to the defendant's

21 | contacts with the forum state.  *Allegro Consultants, Inc. v. Wellington Tech., Inc.*, 13-cv-02204-

22 | BLF, 2014 WL 4352344, at *3 (N.D. Cal. Sept. 2, 2014).  To satisfy the requirements of due

23 | process, "the defendant's suit-related conduct must create a substantial connection with the forum

24 | State."  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).

25 | The Ninth Circuit has articulated a three-part test for determining whether a nonresident

26 | defendant is subject to specific personal jurisdiction:  (i) the non-resident defendant must

27 | purposefully direct his activities or consummate some transaction with the forum or resident

28 | thereof; or perform some act by which he purposefully avails himself of the privilege of

FOREIGN DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:15-CV-01612-RMW

1   conducting activities in the forum, thereby invoking the benefits and protections of its laws; (ii)

2   the claim must be one which arises out of or relates to the defendant's forum-related activities;

3   and (iii) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it

4   must be reasonable.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

5   2004).

6        As discussed above, none of Plaintiffs' claims arise out or relate to actions by the

7   Defendants that took place in or were purposefully directed toward California, or more broadly to

8   the United States as a whole.  Rather, Plaintiffs' suit is premised upon allegations that

9   RUSNANO, a Russian state-owned corporation conducting its business from its Russian

10  headquarters, colluded with corporate insiders on Nitol Solar's board to seize Nitol Solar's shares

11  of INSQU, a Cyprus company operating, through its Russian subsidiaries, a manufacturing plant

12  in Irkutsk, Russia by foreclosing the security for a loan extended to Nitol Solar by RUSNANO

13  and another Russian lender.  As a result, Plaintiff Neas, a Cyprus company, supposedly suffered

14  the loss of its indirect equity stake in INSQU, another Cyprus company, and, while attempting to

15  cast its claim as both direct and derivative, brings claims on behalf of itself and Nitol Solar, a

16  Jersey company.  Plaintiff Tretyakov, Neas's sole shareholder, "at all times relevant thereto….

17  one of the principal architects of Russia's poly-Si program," (Compl. ¶ 70) allegedly suffered an

18  injury solely by virtue of his status as a Neas shareholder.  In fact, other than vague assertions that

19  certain of the Defendants or their unnamed representatives attended unspecified conferences in

20  unspecified locations "in, *inter alia*, the United States" and made vague representations regarding

21  further financing of Nitol Solar to Plaintiff Tretyakov at those conferences in 2010, a year before

22  the alleged misconduct took place (*id.* ¶ 99), the "Operative Facts" portion of Plaintiffs' Amended

23  Complaint contains no allegations of any conduct in the United States at all, let alone any conduct

24  in California.

25       Given the absence of any nexus between the "facts" underlying Plaintiffs' claims and

26  California, the exercise of jurisdiction over the Defendants, none of whom could expect to be

27  haled into an American court to answer allegations of misconduct concerning Russian and other

28  foreign entities allegedly occurring in Russia, would be unreasonable. *See Core-Vent Corp. v.*

1    *Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (exercise of jurisdiction would be

2    unreasonable where "plaintiff is an international corporation and where the defendants are

3    individual citizens of a foreign country who lack connections to the United States and whose

4    purposeful interjection into the forum state has been very limited"); *Nimbus Data Sys., Inc. v.*

5    *Modus LLC*, 14–cv–04192 NCS, 2014 WL 7387200, at *6 (N.D. Cal. Dec. 29, 2014) (dismissing

6    case where "the nexus between [defendant's] forum-related activities and the claim brought by

7    Nimbus [was] too attenuated to support the exercise of specific jurisdiction"); *ChemRisk LLC v.*

8    *Chappel*, C 10–05766 SBA, 2011 WL 1807436, at *4-*7 (N.D. Cal. May 12, 2011) (dismissing

9    case in the absence of  any "allegation or evidence that Defendants engaged in any activities or

10   transacted business aimed at or within California" related to plaintiff's claims); *Mainstream*

11   *Media, EC v. Riven*, C 08–3623 PJH, 2009 WL 2157641, at *7 (N.D. Cal. Jul. 17, 2009)

12   (dismissing complaint where none of defendants' activities were directed at a California plaintiff

13   "[n]or was the harm perpetrated in California, or felt in California").

14         **C.    This Court Lacks Subject Matter Jurisdiction Over The Claims Against**
               **RUSNANO (Or Any Corporate Defendants) Because Each Of Them Enjoys**
15             **Sovereign Immunity On Plaintiffs' Theory Of The Case**

16         The sole basis for United States federal courts to exercise subject matter jurisdiction over

17   claims against a foreign state is the Foreign Sovereign Immunities Act ("FSIA").  *Terenkian v.*

18   *Republic of Iraq*, 694 F.3d 1122, 1127 (9th Cir. 2012) (FSIA "establishes a comprehensive

19   framework for determining whether a court in this country … may exercise jurisdiction over a

20   foreign state").  Under the FSIA, a "foreign state" and its instrumentalities are immune from the

21   jurisdiction of the U.S. courts, subject to certain limited exceptions.  *Id.* citing 28 U.S.C. § 1604.

22         In this case, RUSNANO holds for immunity as an instrumentality of a foreign state

23   because it is a Russian company directly and wholly owned by the Russian Federation.  Compl.

24   ¶¶ 1, 44; First Chubais Decl. ¶ 15, Exhibit 1; 28 U.S.C. § 1603 (defining a "foreign state" to

25   include its  "instrumentality," *i.e.*, any corporate entity "a majority of whose shares or other

26   ownership interest is owned by a foreign state").  Accordingly, RUSNANO is immune from suit,

27

28

unless one of the FSIA's exceptions applies.  *See Terenkian*, 694 F.3d at 1139.  None do.[14]

Sovereign immunity does not generally extend to an instrumentality's subsidiaries, but in this

case, Plaintiffs' pleading necessarily means that RUSNANO's immunity extends to all Corporate

Defendants.   Plaintiffs allege that the Corporate Defendants and Rusnano USA "have no separate

corporate identities …. [and] are each alter egos of… each other…", "each an alter ego of

RUSNANO" and are "mere shells, instrumentalities, conduits and/or agents of RUSNANO" to

"achieve a stated common, singular business purpose of growing the Russian Federation's state-

owned nanotechnology industry through investment of Russian government funds".  Compl.

¶¶ 63(a)(ix-xvi), 218.  Assuming, *arguendo*, the truth of that allegation, the other Corporate

Defendants would be similarly immune from suit.  Plaintiffs cannot have it both ways, and claim

that all Corporate Defendants "have no separate corporate identities" for the purpose of

attempting to obtain jurisdiction over RUSNANO and the other Corporate Defendants in

California and the United States, and at the same time deny such Corporate Defendants the

sovereign immunity that RUSNANO enjoys under the FSIA.

## V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

The Amended Complaint filed in response to the initial motions to dismiss is essentially

the same document, enhanced with a few entirely conclusory allegations and additional rhetorical

heat.  Nothing in the current Amended Complaint lends any greater support to maintaining this

---

[14]  The narrow "commercial activity" exception, which permits suit where the action is based
upon a foreign state's commercial activities in the U.S. or activities abroad that have a "direct
effect" in the U.S., *see* 28 USC § 1605(a)(2), is inapplicable here.  As discussed at length
above, Plaintiffs' suit is based entirely upon alleged misconduct outside of the U.S. that had
no discernable effect in the U.S.  The U.S. activities that Plaintiffs do allege lack a required
"nexus" or "material connection" with their claims, and do not abrogate immunity.  *See
Terenkian*, 694 F.3d at 1132-33 ("even if the foreign sovereign regularly conducts other
commercial activity in the United States, if that activity has no connection with … the
conduct which gave rise to plaintiff's cause of action it will not suffice to abrogate sovereign
immunity").  Likewise, Plaintiffs do not and cannot allege a "direct effect" in the U.S.  The
only such effect was the supposed *indirect* harm to Tretyakov, a Connecticut resident and
shareholder of Neas, who allegedly suffered a double-derivative injury resulting from Neas's
loss of its indirect interest in the Nitol Plant.  Even if Tretyakov had suffered a direct financial
loss and was a Connecticut resident at the time, this would not be sufficient.  *See id.* at 1135
("mere financial loss by a person … in the U.S. is not, in itself, sufficient to constitute a
'direct effect'" to abrogate sovereign immunity).

1  implausible action in California that did the original Complaint.  One can only conclude that

2  those defects are irreparable, and that allowing further amendment at this point would be futile.

3  Accordingly, Plaintiffs' Amended Complaint should be dismissed without leave to amend. *Agardi*

4  *v. Hyatt Hotels Corp.*, C 14–0347, 2014 WL 2860658, at *5 (N.D. Cal. Jun. 23, 2014) (dismissal

5  without leave to amend where "there is no indication that any other facts exist to cure []

6  deficiency" in complaint); *A.R. Intern. Sys., Inc. v. Pretoria Nat. Cent. Bureau of Interpol*, 634 F.

7  Supp. 2d 1108, 1119 (E.D. Cal. 2009) (dismissing complaint where plaintiff "amended the

8  complaint once" and "further amendment would be futile").

9  **VI.   CONCLUSION**

10         For the foregoing reasons, and those set forth in Rusnano USA's Motion, the Foreign

11  Defendants respectfully request that the Court grant their motion and dismiss the Amended

12  Complaint in its entirety as against them, without leave to amend.

13

14  Dated: October 30, 2015            Respectfully submitted,

15                                     ORRICK, HERRINGTON & SUTCLIFFE LLP

16                                     By: /s/ Karen G. Johnson-McKewan
                                           Karen G. Johnson-McKewan

17                                     Attorneys for Defendants OJSC RUSNANO; Rusnano
                                       Management Company, LLC; Rusnano Capital, A.G.;
18                                     Rusnano Capital, LLC; Fonds Rusnano Capital, S.A.;
                                       Anatoly Chubais; Oleg Kiselev; Irina Rapoport; Sergey
19                                     Polikarpov; and Valery Rostokin

20

21

22

23

24

25

26

27

28

FOREIGN DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:15-CV-01612-RMW