UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAS LIMITED, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>OJSC RUSNANO, et al.,<br><br>        Defendants. | Case No. 5:15-cv-01612-RMW<br><br>**ORDER DENYING JURISDICTIONAL DISCOVERY**<br><br>**(Re: Docket No. 51)** |

Plaintiffs Neas Limited and Andrey Tretyakov are suing Defendants Rusnano USA, OJSC RUSNANO, Rusnano Management Company, LLC, Rusnano Capital, A.G., Rusnano Capital, LLC, Fonds Rusnano Capital, S.A., Anatoly Chubais, Oleg Kiselev, Irina Rapoport, Sergey Polikarpov and Valery Rostokin regarding an allegedly illegal takeover of Nominal Defendant Nitol Solar Limited.[1] Rusnano USA and Foreign Defendants—all Defendants except Rusnano USA[2]—separately move to dismiss.[3] Foreign Defendants rely heavily on forum non conveniens and alternatively, a lack of personal jurisdiction,[4] so Plaintiffs request leave to conduct jurisdictional discovery and an extension of the deadline for opposing the motions to dismiss.[5]

Plaintiffs' motion is DENIED.[6]

---

[1] *See* Docket No. 43.

[2] *See* Docket No. 50 at 1.

[3] *See* Docket Nos. 46, 50.

[4] *See* Docket No. 50 at 8-23.

[5] *See* Docket No. 51 at 5.

[6] Rusnano USA's separate request for an order setting a briefing schedule on its motion to dismiss

I.

Neas, a Cyprus company,[7] is a minority shareholder in Nitol Solar, an entity formed under the laws of the Bailiwick of Jersey,[8] and Tretyakov is Neas' owner and a U.S. citizen residing in Connecticut.[9] Rusnano USA is a Delaware company based in Menlo Park, California, and is owned by Russia-based Defendants OJSC RUSNANO and Rusnano Management Co.[10] All the corporate Defendants are owned, directly or indirectly, by the Russian State, and all of them aside from Rusnano USA are organized under the laws of foreign countries and have their principle places of business outside of the United States.[11] All of the individual defendants reside and work in Russia,[12] and none is alleged to live or work in California.[13] In terms of jurisdictional events, Plaintiffs allege that Nitol's founders and Rusnano's representatives met at solar industry conferences in the U.S. in 2008 and 2010.[14] Plaintiffs also allege that the Russian Rusnano companies siphoned money from their allegedly unlawful takeover of Nitol into California via Rusnano USA.[15]

---

also is DENIED. *See* Docket No. 57 at 5. All scheduling requests regarding dispositive motions must be directed to the presiding judge.

[7] *See* Docket No. 50 at 2.

[8] *See id.*

[9] *See* Docket No. 51 at 1; Docket No. 58 at 4.

[10] *See* Docket No. 46 at 2.

[11] *See* Docket No. 50 at 5.

[12] *See id.* at 6.

[13] *See* Docket No. 58 at 4.

[14] *See* Docket No. 43 at ¶¶ 83, 99.

[15] *See id.* at ¶ 63.

## II.

The court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. This matter was referred to the undersigned pursuant to Fed. R. Civ. P. 72(a).

A district court has "broad discretion" to permit or deny discovery to aid in determining whether it has personal jurisdiction.[16] Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[17] In this district, courts have generally held that "a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery."[18] Where further discovery on an issue "might well" demonstrate facts sufficient to constitute a basis for jurisdiction, it is an abuse of discretion to deny it.[19]

However, denial of discovery "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction."[20] "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."[21]

---

[16] *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

[17] *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citations omitted).

[18] *See, e.g.*, *Corcera Sols., LLC v. Razor, Inc.*, Case No. 5:13–cv–05113–PSG, 2014 WL 587869 at *2–3 (N.D. Cal. Feb. 14, 2014); *Calix Networks, Inc. v. Wi–Lan, Inc.*, Case No. C–09–06038–CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010).

[19] *Harris Rutsky & Co. Ins. Serv. v. Bell & Clements*, 328 F.3d 1122, 1135 (9th Cir. 2003).

[20] *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015).

[21] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quotations and citation omitted).

### III.

Applying the above standards, the court concludes that Plaintiffs have not justified their demand.

***First***, personal jurisdiction clearly exists over Rusnano USA. Because a "more satisfactory showing of the facts" is unnecessary, jurisdictional discovery is inappropriate.[22]

***Second***, "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction"[23] over Foreign Defendants. Foreign Defendants have specifically denied Plaintiffs' allegations of jurisdictional facts, and Plaintiffs have not countered these denials beyond broad assertions that Defendants, as a group, used Rusnano USA as an alter ego, and that the corporate Defendants have business dealings in the U.S.[24]

To support personal jurisdiction over Individual Defendants, Plaintiffs allege that Chubais does Rusnano-related business in the U.S., has contacts with both the U.S. and the Northern District, and travels to the U.S. on a monthly basis.[25] They also allege that Kiselev and Rapoport have contacts with the U.S. and the Northern District[26] and that Polikarpov sits on the board of U.S. companies and has contacts with California.[27] But they do not plead facts supporting personal jurisdiction over Rostokin in the First Amended Complaint.[28] And each Individual Defendant contests personal jurisdiction and swears to facts showing that jurisdictional discovery is highly unlikely to unearth facts sufficient to establish general or specific jurisdiction over any Individual Defendant.

---

[22] *Laub*, 342 F.3d at 1093.

[23] *Wells Fargo & Co.*, 556 F.2d at 430 n.24.

[24] *See* Docket No. 59 at 5.

[25] *See* Docket No. 43 at ¶¶ 63(b), (65).

[26] *See id.* at ¶ 63(c).

[27] *See id.* at ¶ 63(d).

[28] *See id.* at ¶ 63(e).

Chubais states in a sworn declaration that he has never had "regular, systematic or substantial contacts with California," or done business in California.[29] While Chubais has traveled to California approximately eight times for conferences and business meetings, Plaintiffs do not suggest that these travels were related to Nitol or the events giving rise to Plaintiffs' claim.[30] In his capacity as CEO and Chairman of the Executive Board of Directors of Rusnano Management, and a director of OJSC RUSNANO, Chubais also states that neither Rusnano Management nor OJSC RUSNANO has conducted any Nitol-related activities in California.[31] As a matter of logic, Chubais therefore also has not engaged in Nitol-related activities in California as a director or officer of Rusnano Management and OJSC RUSNANO. Contrary to Plaintiffs' claim, Chubais states that he does not travel to the U.S. on a monthly basis, and has visited the U.S. approximately four times in the last three years.[32]

Rapoport also states in a sworn declaration that she has not had any "regular, systematic or substantial contacts with California"[33] since the mid-1990s, when she "left California and never returned" after working and studying there.[34] She also swears that she had "no personal involvement in any business with Nitol . . . and certainly did not conduct any business concerning" Nitol in California.[35]

Kiselev similarly swears that he has "never had regular, systematic or substantial contacts with California," and that he has been to California only once, for a two-day visit in May 2009.[36] Plaintiffs

---

[29] Docket No. 35-6 at ¶¶ 5, 9.

[30] *See id.* at ¶ 13.

[31] *See id.* at ¶ 27.

[32] *See* Docket No. 50-1 at ¶¶ 2-3.

[33] Docket No. 35-1 at ¶ 5.

[34] *Id.*

[35] *Id.* at ¶ 14.

[36] Docket No. 35-2 at ¶¶ 5, 9-11.

do not allege that this trip was related to Nitol or the events giving rise to their claims; indeed, Kiselev swears that his "trips to the United States have been focused on academic discussions, study or participation in the activities of philanthropic organizations," and that he has "never done or solicited business in California."[37]

Polikarpov also swears that he has "never had regular, systematic or substantial contacts with California."[38] Moreover, contrary to Plaintiffs' allegations, he does not currently serve on the board of any U.S. company and has not since 2013.[39] While he has had business meetings and phone calls in or to California, these were concerning matters "unrelated to Nitol . . . or any of the allegations in the Complaint," and he does "not recall any activities in California with respect to the Nitol project."[40]

Plaintiffs do not specifically counter any of these sworn statements and instead allege that all Defendants used Rusnano USA as an alter ego.[41] However, no Individual Defendant has ever been an officer or director of Rusnano USA,[42] and Plaintiffs do not contravene Chubais' sworn statement that Rusnano USA is "autonomous from its owners and has its own distinct corporate identity."[43] In sum, in light of Individual Defendants' uncontroverted, sworn statements, Plaintiffs have not satisfied even the low bar for showing that discovery might well demonstrate facts sufficient to constitute a basis for specific or general jurisdiction over any of the Individual Defendants.

To support personal jurisdiction over Corporate Defendants, Plaintiffs allege that the

---

[37] *Id.* at ¶ 13.

[38] Docket No. 35-3 at ¶ 6.

[39] *See id.* at ¶ 10.

[40] *Id.* at ¶¶ 13-14.

[41] *See* Docket No. 59 at 5.

[42] *See* Docket No. 35-1 at ¶ 12; Docket No. 35-2 at ¶ 12; Docket No. 35-3 at ¶ 11; Docket No. 35-5 at ¶ 2; Docket No. 35-6 at ¶ 12.

[43] Docket No. 35-6 at ¶ 26.

RUSNANO Group—i.e., all corporate Defendants, including Rusnano USA itself[44]—has investments in California companies, does business in the U.S. and treats Rusnano USA as an alter ego of itself, as do each of its constituent corporations.[45] But *Daimler AG v. Bauman*[46] forecloses Plaintiffs' first argument, and Plaintiffs do not respond to Corporate Defendants' specific denials of the second.

Under *Daimler AG*, a "court may exercise general personal jurisdiction over a corporation only when its contacts 'render it essentially at home' in the state."[47] The "'paradigm' fora for general jurisdiction are a corporation's place of incorporation and principal place of business. Only in an 'exceptional case' will general jurisdiction be available anywhere else."[48] The Ninth Circuit has held that general jurisdiction is not available over a foreign corporation that has "no offices, staff, or other physical presence in California" and "is not licensed to do business in the state."[49]

Each Corporate Defendant is incorporated and has its principal place of business outside of the U.S., and none of them is licensed to do business in California or has offices, staff, or other physical presence here.[50] That OJSC RUSNANO has investments in California[51] does not make this an exceptional case, given the foregoing facts.

As for the alter ego argument, Rapoport, in her capacity as CEO of Rusnano Capital, LLC

---

[44] *See* Docket No. 43 at ¶50.

[45] *See id.* at ¶ 63(a)(ix)-(xvi).

[46] *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

[47] Martinez, 764 F.3d at 1064 (quoting *Daimler AG*, 134 S. Ct. at 751).

[48] *Martinez*, 764 F.3d at 1070 (quoting *Daimler AG*, 134 S. Ct. at 760, 761 n.19).

[49] *Martinez*, 764 F.3d at 1070.

[50] *See* Docket No. 35-1 at ¶¶ 16-18, 21-22; Docket No. 35-6 at ¶¶ 15-18, 22-23.

[51] *See* Docket No. 35-6 at ¶¶ 24-25.

and board member of Rusnano Capital, A.G. and Fonds Rusnano Capital, states that none of these companies has an ownership stake in Rusnano USA.[52] Speaking for Rusnano Management and OJSC RUSNANO, Chubais states that Rusnano USA is "autonomous from its owners and has its own distinct corporate identity. Neither [OJSC] RUSNANO nor Rusnano Management has day-to-day control over Rusnano USA."[53] Because the evidence that Defendants "proffer[] concerning the legal separateness of the entities is uncontroverted," allowing jurisdictional discovery would be permitting "nothing more than a 'fishing expedition.'"[54]

**SO ORDERED.**

Dated: December 30, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[52] *See* Docket No. 35-1.

[53] Docket No. 35-6 at ¶ 26.

[54] *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997 (C.D. Cal. 2013) (quoting *Martinez v. Manheim Central California*, Case No. 1:10–cv–01511–SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011)).