UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEAS LIMITED, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>OJSC RUSNANO, et al.,<br><br>　　　　Defendants. | Case No. 5:15-cv-01612-RMW<br><br>**ORDER RE: MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. NO. 70)**<br><br>Re: Dkt. No. 71 |

Before the court is plaintiffs' Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge. Dkt. No. 71. Plaintiffs assert six objections to the magistrate judge's order denying plaintiffs' request to conduct jurisdictional discovery before plaintiffs are required to respond to defendants' pending motions to dismiss. Dkt. No. 70. This court ordered supplemental briefing, Dkt. No. 73, which the parties provided, Dkt. Nos. 75, 78, 79. For the reasons stated below, plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

I.  **BACKGROUND**

Plaintiffs Neas Limited and Andrey Tretyakov are suing defendants OJSC Rusnano; Rusnano USA, Inc.; Rusnano Management Company, LLC; Rusnano Capital, A.G.; Rusnano Capital, LLC; Fonds Rusnano Capital, S.A.; Anatoly Chubais; Oleg Kiselev; Irina Rapoport; Sergey Polikarpov; and Valery Rostokin regarding an alleged illegal takeover of nominal

1

1  defendant Nitol Solar Limited. Dkt. No. 43 (First Amended Complaint). Plaintiffs also allege that
2  the foreign defendants (i.e., all defendants except Rusnano USA) siphoned money from their
3  alleged unlawful takeover of Nitol into California via Rusnano USA. Based on the parties'
4  submissions, the magistrate judge found that all of the corporate defendants aside from Rusnano
5  USA are incorporated and have their principal places of business in foreign countries and that all
6  of the individual defendants reside and work in Russia. Dkt. No. 70 at 2.

7  Rusnano USA and the foreign defendants filed separate motions to dismiss the complaint.
8  Dkt. Nos. 46, 50. The foreign defendants argue that they should be dismissed from the case under
9  the forum non conveniens doctrine and due to lack of personal jurisdiction. Dkt. No. 50. The
10 foreign corporate defendants also argue that sovereign immunity bars the claims against them. *Id.*
11 at 23-24. In support of their motions to dismiss, the foreign defendants submitted declarations
12 asserting their lack of ties to California and/or the United States. *See, e.g.*, Dkt. Nos. 35-1, 35-2,
13 35-3, 35-5, 35-6.

14 Pursuant to a stipulation, plaintiffs filed a motion before the magistrate judge for leave to
15 conduct jurisdictional discovery before plaintiffs had to respond to the motions to dismiss. Dkt.
16 No. 51. The magistrate judge denied plaintiffs' motion for discovery. Dkt. No. 70. Plaintiffs then
17 filed the instant motion for relief. Dkt. No. 71.

## II.  ANALYSIS

19 The magistrate judge's order is reviewed pursuant to Fed. R. Civ. P. 72(a), which provides
20 that "[t]he district judge in the case must consider timely objections [to a magistrate's order] and
21 modify or set aside any part of the order that is clearly erroneous or is contrary to law."

### A.  New Evidence

23 Weeks after submitting their reply in support of their request for jurisdictional discovery,
24 plaintiffs filed a declaration from Ilya Ponomarev, a former member of the Russian Duma who
25 purported to have knowledge of certain defendants' ties to the United States. Dkt. No. 67-1 (also
26 filed at Dkt. No. 72-1). The magistrate judge did not consider the Ponomarev declaration because
27 it was untimely under Civil Local Rule 7-3(d). A district court, however, has discretion, but is not

required, to consider evidence presented for the first time in a party's objection to a magistrate judge's order. *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). Because portions of the Ponomarev declaration call certain statements in defendants' declarations into question, and the late submission does not appear to have been in bad faith, this court exercises its discretion and considers the Ponomarev declaration in evaluating plaintiffs' request for relief.

### B.   Requirements for Jurisdictional Discovery

"There are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Plaintiffs appear to have abandoned their argument that the foreign defendants are subject to general jurisdiction in this court, *see* Dkt. No. 74 at 1, so this order considers only specific jurisdiction. The Ninth Circuit has articulated the following three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.*

With respect to the first prong, the "purposeful availment" analysis is generally used for contract claims. *Id.* at 1212. For tort claims, the Ninth Circuit applies a "purposeful direction" test that examines "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* In analyzing purposeful direction, courts apply the Supreme Court's "effects" test from *Calder v. Jones*, 465 U.S. 783 (1983). Under *Calder*, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Picot*, 780 F.3d at 1213-14.

With respect to the second prong, specific jurisdiction requires that the claim against the

defendant be one that arises out of or relates to the defendant's forum-related activities. The court "must determine if the plaintiff . . . would not have been injured 'but for' the defendant's . . . conduct directed toward [plaintiff] in [the forum]." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

With respect to the third prong, reasonableness, the court considers the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. None of the factors is dispositive in itself; instead, [the court] must balance all seven.

*Core–Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977)). Discovery may be appropriate where further discovery on an issue "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). On the other hand, "[a] refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

"Personal jurisdiction over each defendant must be analyzed separately." *Harris Rutsky*, 328 F.3d at 1130.

### C. Plaintiffs' Objections to the Magistrate Judge's Order

#### 1. The Foreign Defendants' Contacts with the United States as a Whole

Plaintiffs first argue that the magistrate judge erred by only considering the foreign

4
5:15-cv-01612-RMW
ORDER RE: MOT. FOR RELIEF FROM ORDER OF MAGISTRATE JUDGE (DKT. NO. 70)
RS

defendants' contacts with California and not the United States as a whole. Under Federal Rule of Civil Procedure 4(k)(2),[1] a court analyzing personal jurisdiction can consider "the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). To utilize Rule 4(k)(2), the "federal long-arm statute," a plaintiff must prove three factors. "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 1159 (internal citations omitted). The due process inquiry into a defendant's contacts with the forum "is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States." *Id.*

### a. Due Process and Minimum Contacts

The court first addresses the issue of whether plaintiffs have shown that they are entitled to discovery regarding the foreign defendants' contacts with the United States because for most defendants, this issue is dispositive. Plaintiffs are correct that the magistrate judge generally analyzed each foreign defendant's contacts with California rather than their contacts with the United States as a whole. With few exceptions, however, even considering the Ponomarev declaration, and even analyzing each foreign defendant's ties to the United States as a whole, the court concludes that the magistrate judge did not err in denying jurisdictional discovery.[2]

With respect to the corporate defendants, based on plaintiffs' complaint and declarations from Rapoport and Chubais, the magistrate judge found that Rusnano Management Company, LLC; Rusnano Capital, A.G.; Rusnano Capital, LLC; and Fonds Rusnano Capital, S.A. are incorporated and have their principal places of business outside the United States and have no

---

[1] "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

[2] The court notes that plaintiffs attempt to group the foreign defendants together and argue that defendants' aggregate contacts with the United States are extensive. Under precedent cited by plaintiffs, however, this approach is improper; plaintiffs are required to demonstrate that the court has personal jurisdiction over each separate defendant. *See Harris Rutsky*, 328 F.3d at 1130.

physical presence in California. Dkt. No. 70 at 7-8. Plaintiffs' complaint does not offer any jurisdictionally significant allegations regarding these defendants' contacts with the United States. Moreover, the Ponomarev declaration does not discuss these four defendants by name other than in a brief, jurisdictionally irrelevant reference to Rusnano Capital A.G.[3] Thus, plaintiffs have not pointed to any clear error in the magistrate judge's findings for these four defendants. This court agrees with the magistrate judge that plaintiffs have failed to show discovery might well demonstrate facts sufficient to constitute a basis for personal jurisdiction over Rusnano Management Company, LLC; Rusnano Capital, A.G.; Rusnano Capital, LLC; and Fonds Rusnano Capital, S.A. The court addresses plaintiffs' arguments regarding OJSC Rusnano and plaintiffs' theory of "alter ego" liability below.

Similarly, with respect to individual defendants Rapoport, Polikarpov, and Rostokin, the magistrate judge reviewed plaintiffs' allegations and the declarations submitted by defendants and concluded that jurisdictional discovery is highly unlikely to unearth facts sufficient to establish personal jurisdiction over these individuals. Dkt. No. 70 at 4-6. Once again, the Ponomarev declaration does not even mention these individuals by name. Thus, plaintiffs have provided no basis to find error in the magistrate judge's conclusion that jurisdictional discovery for Rapoport, Polikarpov, and Rostokin should be denied.

Plaintiffs have, however, provided support for their argument that jurisdictional discovery related to Chubais, Kiselev and OJSC Rusnano may be appropriate. The Ponomarev declaration does actually discuss these three defendants' contacts with the United States, in contrast to the defendants mentioned in previous paragraphs of this order. Specifically, Mr. Ponomarev declares:

> 18. In or around January 2010, I was part of a delegation that travelled to Boston to further address the expansion of the Russian high technology sector in series of meetings with MIT officials, including then-Provost Rafael Reif. ***The delegation included, among others Chubais***.
>
> 19. During the trip, ***Chubais described Rusnano's experience with Nitol*** and sought out advice as to how to properly operate in US

---

[3] Dkt. No. 72-1 ¶¶ 23, 35.

6
5:15-cv-01612-RMW
ORDER RE: MOT. FOR RELIEF FROM ORDER OF MAGISTRATE JUDGE (DKT. NO. 70)
RS

> market.
>
> 20. To be sure, the structure of Nitol was discussed in significant detail and was a major topic of conversation given Rusnano's relatively short track record at that point in time. I recall the following topics being discussed in the United States in regard to Nitol: (i) the lack of capital for technology deals in Russia; (ii) the fact that due to time pressures Rusnano investment in Nitol was not done the right way; (iii) ***Kiselev's concerns regarding legal restrictions*** under Russian law related to 50% co-investment requirement; (iv) the need for Rusnano to "sweeten" the deal for Alfa Bank ("Alfa") also a lender in regard to ***Nitol***; (v) ***the fact that the original structure of Nitol did not give Rusnano sufficient decision-making power over the plant's affairs***; (vi) an investigation of the original deal started by local law enforcement; and (vii) ***the need for Rusnano to fully control Nitol***.

Dkt. No. 72-1 ¶¶ 18-20 (emphasis added). The declaration also describes a series of meetings in Cambridge, Massachusetts regarding an "investment fund that Chubais and Kiselev planned on creating" in the United States. *Id.* ¶ 21. These purported meetings may have been unrelated to plaintiffs' allegations of wrongdoing, as defendants claim, but the Ponomarev declaration provides at least limited support for plaintiffs' theory that some of the acts related to the alleged "takeover" of Nitol occurred in the United States. Moreover, the declaration seems to contradict Chubais's and Kiselev's assertions that they did not have regular contact with the United States. The court finds it appropriate to allow plaintiffs to further explore these issues through limited discovery aimed at Chubais, Kiselev, and OJSC Rusnano.

### b. Whether Plaintiffs' Claims Arise Under Federal Law

To invoke Rule 4(k)(2), plaintiffs' claims must arise under federal law. Plaintiffs' only federal claim is for civil RICO under 18 U.S.C. § 1961. Defendants assert that the complaint fails to state a claim under RICO. Dkt. No. 79 at 3-5. Because plaintiffs have not had an adequate opportunity to address the merits of defendants' RICO arguments, however, the court finds it premature to rule out discovery on that basis.

### c. Whether Defendants Are Subject to Jurisdiction in Any State

Rule 4(k)(2)'s remaining requirement is that the defendants not be subject to jurisdiction in any U.S. state. Defendants point out that plaintiffs argued before the magistrate judge that the foreign defendants are subject to jurisdiction in California. In their motion for relief, plaintiffs

appear to have changed their position to argue that the foreign defendants are not subject to jurisdiction in any state court. While the court finds plaintiffs' shift in advocacy somewhat troubling, in this instance, the court will assume that plaintiffs have argued in the alternative to conform their arguments to the proof defendants have presented. The court further notes that the foreign defendants have not indicated a state in which they are subject to personal jurisdiction.

* * *

In sum, the court finds that plaintiffs have made a showing that discovery might well demonstrate facts sufficient to constitute a basis under Rule 4(k)(2) for personal jurisdiction over Chubais, Kiselev, and OJSC Rusnano.[4]

### 2.     Alter Ego Theory

Plaintiffs also argue that the magistrate judge erred in denying jurisdictional discovery without considering plaintiffs' theory that Rusnano USA is the "alter ego" of OJSC Rusnano. A parent-subsidiary relationship is generally "insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes," but an exception exists when the subsidiary is the parent's "alter ego." *Harris Rutsky*, 328 F.3d at 1134. To satisfy the alter ego test, a plaintiff must show "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* (citation omitted).

In this case, the magistrate judge did not fail to consider plaintiffs' alter ego theory. To the contrary, the magistrate judge considered plaintiffs' theory and rejected it. Dkt. No. 70 at 6. The magistrate judge found that "no Individual Defendant has ever been an officer or director of Rusnano USA." Moreover, the magistrate judge noted, "Plaintiffs do not contravene Chubais'[s] sworn statement that Rusnano USA is 'autonomous from its owners and has its own distinct corporate identity.'" *Id.* (citing Dkt. No. 35-6 ¶ 26). These findings were not clearly erroneous based on the record before the magistrate judge.

---

[4] Thus, the court need not address plaintiffs' alternative argument that the foreign defendants are subject to personal jurisdiction under 18 U.S.C. §§ 1965(b) and (d).

If this court considers the Ponomarev declaration, however, potential disputes of fact start to emerge. For example, Ponomarev declares that "[t]he final decision to rent Menlo Park offices," i.e., the offices of Rusnano USA, "was made personally by Anatoly Chubais in California." Dkt. No. 72-1 ¶ 38. Moreover, Ponomarev declares, "Chubais indicated he wished to have a personal office adjacent to his investment operations in Silicon Valley." *Id.* ¶ 41. Ponomarev concludes that "regardless of form, the existence of a separate entity as Rusnano USA is a matter of legal convenience for Rusnano and Akhanov, Rusnano USA's president, reports directly to Chubais and is regarded as a Rusnano manager." *Id.* ¶ 43. While Ponomarev's statements are insufficient in and of themselves to state a prima facie case for personal jurisdiction over OJSC Rusnano under an alter ego theory, his statements at least support the possibility that discovery might well demonstrate facts sufficient to constitute a basis for personal jurisdiction. Accordingly, the court concludes that limited discovery in support of plaintiffs' alter ego theory is appropriate.

### 3. Plaintiffs' Other Objections

Because the court is allowing limited jurisdictional discovery, the court need not address plaintiffs' other objections to the magistrate judge's order.

### D. Impact of Defendants' Other Grounds for Dismissal

Defendants argue that there is no need to even address the issue of personal jurisdiction because this case should be dismissed under the doctrines of forum non conveniens or foreign sovereign immunity. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."). Defendants' argument is appealing, but the court finds that in this instance, there is sufficient overlap between the facts relevant to a forum non conveniens inquiry and those relevant to a personal jurisdiction inquiry to allow discovery to proceed. For example, if, as Mr. Ponomarev asserts, Mr. Chubais has a personal office in Menlo Park, California, Dkt. No. 72-1 ¶ 41, a forum non conveniens dismissal of the claims against him would seem less appropriate.

As for foreign sovereign immunity, the court finds that this argument has not been sufficiently well developed to justify denying discovery. In any event, the individual defendants do not assert foreign sovereign immunity, so this argument would not apply to them.

### E.    Scope of Permissible Discovery

While the court concludes that some jurisdictional discovery is appropriate, the set of discovery requests that plaintiffs have proposed, Dkt. Nos. 75-1 – 75-3 is overbroad, unduly burdensome, and out of proportion with the needs of this case. In its discretion, the court rules that plaintiffs may request the following documents from OJSC Rusnano, Chubais, and Kiselev:

> 2. All documents (including presentations) disseminated to any U.S. Person by or on behalf of OJSC Rusnano, Chubais, or Kiselev that mention the Nitol Plant during the Relevant Time Period.
>
> 3. All documents (including notes) regarding any meeting between OJSC Rusnano, Chubais, or Kiselev and any U.S. Person in regard to the Nitol Plant.
>
> 9. All documents (including communications as among OJSC Rusnano, Chubais, or Kiselev) regarding the establishment of an office or legal entity in the United States.
>
> 10. All documents sufficient to show the organizational structure of OJSC Rusnano and Rusnano USA, including the boards of directors and management team of each entity during the Relevant Time Period
>
> 11. Any and all agreements between OJSC Rusnano and Rusnano USA regarding the management and operation of Rusnano USA.

Dkt. No. 75-2 (as modified by the court). Furthermore, the court rules that plaintiffs may propound any seven of their proposed interrogatories, Dkt. No. 75-3, on OJSC Rusnano, Chubais, and Kiselev with the modification that "Foreign Defendants" in plaintiffs' proposed interrogatories shall be redefined to mean "defendants OJSC Rusnano, Chubais, and Kiselev." Finally, plaintiffs may depose either Chubais or Kiselev for four hours. Because Rusnano USA concedes that this court has personal jurisdiction over it, plaintiffs may not seek any discovery from Rusnano USA or its CEO.

### III.   ORDER

For the reasons explained above, plaintiffs' motion for relief from the magistrate judge's

1  order is GRANTED IN PART as follows. Plaintiffs may pursue limited discovery consistent with
2  this order directed toward Chubais, Kiselev, and OJSC Rusnano for 60 days. In all other respects,
3  plaintiffs' motion for relief is DENIED.
4      At the expiration of the 60-day discovery window, defendants may renew their motions to
5  dismiss with any adjustments necessary to account for facts uncovered in discovery.
6      **IT IS SO ORDERED.**
7  Dated: September 30, 2016

*Ronald M. Whyte*
Ronald M. Whyte
United States District Judge